Question Submitted by: John D. Harrington, Chairman, Statewide Virtual Charter School Board
2015 OK AG 11
Decided: 11/09/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 11, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask the following questions:
1. Does the Oklahoma Charter Schools Act establish the Statewide Virtual Charter School Board as a state agency/entity separate and apart from the State Department of Education?
2. Does the Office of Management and Enterprise Services ("OMES") have the authority to establish a separate cash account for the Statewide Virtual Charter School Board?
3. Does the Oklahoma Charter Schools Act require the State Department of Education to serve as the budgeting entity of the Statewide Virtual Charter School Board after December 31, 2014?
I.
Introduction
¶1 Since 1999, Oklahoma has supplemented its traditional public school system with a concurrent system that allows for the creation and maintenance of charter schools. See 1999 Okla. Sess. Laws ch. 320, § 6 (currently at 70 O.S.2011, § 3-131). Among other things, charter schools encourage the development of innovative teaching methods, foster healthy competition with traditional public schools, and increase learning opportunities for students. See 70 O.S.2011, § 3-131. While it used to be that charter schools could only exist in brick and mortar buildings within clearly defined school districts, that is not true today. Technological advances led to the emergence of virtual charter schools whose boundaries extend to all corners of the State. Because these virtual schools cannot be contained within the traditional geographical boundaries of a school district, the Legislature created a new mechanism for their sponsorship--the Statewide Virtual Charter School Board. Your questions revolve around whether the Legislature intended this Board to be its own state agency.
II.
The Statewide Virtual Charter School Board
¶2 The Oklahoma Legislature created the Statewide Virtual Charter School Board ("Board") in 2012,[1] giving the Board "sole authority to authorize and sponsor statewide virtual charter schools" within the State. 70 O.S.Supp.2015, § 3-145.1(A). The Board is made up of five appointed members--one by the Governor, two by the President Pro Tempore of the Senate, and two by the Speaker of the House of Representatives--and two ex-officio, non-voting members, the State Superintendent of Public Instruction, and the Secretary of Education, or their designees. Id. Pursuant to statute, the Board must:

1. Provide oversight of the operations of statewide virtual charter schools in this state;
2. Establish a procedure for accepting, approving and disapproving statewide virtual charter school applications and a process for renewal or revocation of approved charter school contracts which minimally meet the procedures set forth in the Oklahoma Charter Schools Act;
3. Make publicly available a list of supplemental online courses which have been reviewed and certified by the Statewide Virtual Charter School Board to ensure that the courses are high quality options and are aligned with the subject matter standards adopted by the State Board of Education pursuant to Section 11-103.6 of this title. The Statewide Virtual Charter School Board shall give special emphasis on listing supplemental online courses in science, technology, engineering and math (STEM), foreign language and advanced placement courses. School districts shall not be limited to selecting supplemental online courses that have been reviewed and certified by the Statewide Virtual Charter School Board and listed as provided for in this paragraph; and
4. In conjunction with the Office of Management and Enterprise Services, negotiate and enter into contracts with supplemental online course providers to offer a state rate price to school districts for supplemental online courses that have been reviewed and certified by the Statewide Virtual Charter School Board and listed as provided for in paragraph 3 of this subsection.

70 O.S.Supp.2015, § 3-145.3(A). 
¶3 Initially, the State Department of Education provided the Board with staff support. Id. § 3-145.1(F). But after December 31, 2014, the Board began providing its own staff support and now has the sole authority to hire and terminate its own employees. Id.; OAC 777:1-1-4(b). In order to pay for that administrative support and in furtherance of the Board's mission, the Board may retain up to 5 percent of the state aid allocated to statewide virtual charter schools. Id. § 3-145.3(D). The 5 percent retained by the Board then flows into the Statewide Virtual Charter School Board Revolving Fund, which was created earlier this year and which can only be operated by the Board. The provision that created the Fund states:

There is hereby created in the State Treasury a revolving fund for the Statewide Virtual Charter School Board to be designated the "Statewide Virtual Charter School Board Revolving Fund". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of all monies received by the Statewide Virtual Charter School Board from State Aid pursuant to Section 3-145.3 of Title 70 of the Oklahoma Statutes or any other state appropriation. All monies accruing to the credit of the fund are hereby appropriated and may be budgeted and expended by the Statewide Virtual Charter School Board for the purpose of supporting the mission of the Statewide Virtual Charter School Board. Expenditures from the fund shall be made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the Director of the Office of Management and Enterprise Services for approval and payment.

70 O.S.Supp.2015, § 3-145.7 (emphasis added). The Board is further authorized to promulgate rules "as may be necessary to implement" the Oklahoma Charter Schools Act. 70 O.S.Supp.2015, § 3-145.4. 
III.
The Legislature Intended the Board to be an Entity 
Separate and Apart From the State Department of Education
¶4 In construing any statute, we must first ascertain and give effect to legislative intent. YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶ 6, 136 P.3d 656, 658. Where that intent is not expressly stated, we look to "various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying that intent." Id. Because there is no language providing for the creation of an agency or executive office in the Board's enabling statute, we must look to the structure and nature of the Board itself as evidence of the Legislature's intent. 
¶5 When we have conducted similar analyses regarding an entity's independent status in the past, we have considered the following, albeit non-exhaustive, factors: whether the entity's enabling statute has specific language indicating its independent nature; whether the entity in question employs its own staff; who has control over revolving funds; and whether the entity is authorized to promulgate rules. 
¶6 For example, in 2003 we examined the statutorily created Oklahoma State Bond Advisor ("Bond Advisor") and that position's relationship to the Department of Central Services. See A.G. Opin. 2003-3. In that opinion, we concluded that the Bond Advisor was not subject to control by or subordinate to the Director of the Department of Central Services. Id. at 20. At its outset, the Bond Advisor was a "position within the [Department of Central Services.]" Id. at 16, (citing 62 O.S.Supp.1987, § 695.7(B)).[2] However, that description was later amended to read "[t]he Oklahoma State Bond Advisor shall be an independent position within the [Department of Central Services]" and "may employ the necessary staff to carry out the duties of the Bond Advisor." 1990 Okla. Sess. Laws ch. 342, § 2(B) (amending 62 O.S.Supp.1989, § 695.7(B)). Additionally, funding for the Bond Advisor flowed to the Bond Oversight Revolving Fund. Even though the Fund's provision stated that "[a]ll monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the Department of Central Services," A.G. Opin. 2003-3, at 19 (quoting 62 O.S.2001, § 695.8a), we found that "nothing in the statutes authorizes the Department of Central Services to regulate how the money in the revolving fund may be spent." A.G. Opin. 2003-3, at 20. Therefore, we concluded that "[t]he Director of the Department of Central Services ha[d] no authority to impose specific budget cuts on funds appropriated for the Oklahoma State Bond Advisor." Id.
¶7 That same year, we also analyzed the relationship between the Real Estate Appraiser Board and the Oklahoma Insurance Department. See A.G. Opin. 2003-9. In that Opinion, we concluded that the Real Estate Appraiser Board functioned independently from the Oklahoma Insurance Department for three main reasons. First, the Legislature had explicitly stated that it was "independent" from and "adjunct to" the Insurance Department. Id. at 39 ("Actions of the Board shall not be subject to review by the [Insurance] Department."). Id. at 40. Second, the role of the Insurance Department with respect to the Real Estate Appraisers Board was limited only to providing administrative support and other assistance as may be requested by the Board. Id. at 40. And third, the Real Estate Appraiser Board had the authority to promulgate regulations and other functions necessary to implement the Act. Id.; see 59 O.S.2011, § 858-706. 
¶8 Many of the characteristics we relied on in those opinions are present here. First, the supervisory power of the State Department of Education is limited only to reviewing sponsorship denials. Second, the Statewide Virtual Charter School Board maintains its own staff "as is authorized by law and necessary to fulfill the duties set forth by Oklahoma statute and regulations." 70 O.S.Supp.2015, § 3-145.1(F); OAC 777:1-1-4. Third, it is the sole authorizer of the budgeting and expenditure of the Statewide Virtual Charter School Board Revolving Fund. 70 O.S. Supp.2015, § 3-145.7. And fourth, the Board was given the authority to promulgate rules. Id. § 3-145.4. In addition to those characteristics, the Board is also given sole authority to "authorize and sponsor statewide virtual charter schools" within the State, and the members of the Board include the State Superintendent of Public Instruction, the Secretary of Education, and five other appointed members. Id. § 3-145.1(A).
¶9 Based on these factors, it appears that it was the Legislature's intent to create an autonomous entity that did not require budgetary or administrative approval from the State Department of Education.[3] The structure and nature of the Statewide Virtual Charter School Board closely resembles the structure and nature of boards and offices we have in the past determined to be independent entities. For these reasons, we find that the Board is an agency independent from the State Department of Education. 
IV.
The Office of Management and Enterprise Services Should 
Establish a Separate Cash Account for the Board that is not 
Subject to Approval by the State Department of Education
¶10 This year, the Legislature created the Statewide Virtual Charter School Board Revolving Fund into which all monies received by the Board from state aid allocations must be deposited. Independent from the finding that the Legislature intended the Board to have the authority to act as a separate entity, the Legislature clearly intended for the Board to budget and expend "[a]ll monies accruing to the credit of the fund . . . for the purpose of supporting the mission of the Statewide Virtual Charter School Board." 70 O.S.Supp.2015, § 3-145.7. Nothing in this provision or the provisions of the Charter School Act authorizes the State Department of Education to regulate how the money in the revolving fund may be spent. Thus, in order to comply with Section 3-145.7, OMES should establish a separate cash account for the Board that is not subject to the State Department of Education's approval. 
¶11 This conclusion is further supported by our State Bond Advisor Opinion. See A.G. Opin. 2003-3. The statute governing the Bond Oversight Revolving Fund specifically gave the Department of Central Services rather than the State Bond Advisor the authority to budget and expend monies within the fund. Nevertheless, we found that because the statute did not sanction that Department's regulation of the money, the Bond Advisor had the sole responsibility for authorizing specific budget cuts. Id. at 20. Here, the statute governing the Statewide Virtual Charter School Board Revolving Fund expressly provides that the revolving fund may "be budgeted and expended by the Statewide Virtual Charter School Board." 70 O.S. Supp.2015, § 3-145.7. There can thus be no question as to the Legislature's intent regarding who shall approve expenditures made from the Fund. 

¶12 It is, therefore, the official Opinion of the Attorney General that:
1. The Oklahoma Charter Schools Act establishes the Statewide Virtual Charter School Board as an entity separate and apart from the State Department of Education.
2. The Office of Management and Enterprise Services should establish a separate cash account for the Statewide Virtual Charter School Board. See 70 O.S.Supp.2015, § 3-145.
3. The Statewide Virtual Charter School Board serves as its own budgeting entity and is not subject to budgetary restrictions of the State Department of Education. See 70 O.S.Supp.2015, § 3-145.7.

E. SCOTT PRUITT
Attorney General of Oklahoma
Sarah Greenwalt
Assistant Solicitor General 
FOOTNOTES
[1] See 2012 Okla. Sess. Laws ch. 367, § 3 (codified at 70 O.S.Supp.2012, § 3-145.1) 
[2] That provision now states that "[t]he Office of the State Bond Advisor shall be a separate state agency as set forth in Section 695.7a . . . ." 62 O.S.Supp.2015, § 695.7(B). 
[3] The Board is not, however, completely separate and distinct from the State Department of Education. As with many state agencies, the Board and the State Department of Education are interrelated. For instance, the Board uses the State Department of Education's facilities for its office, see 70 O.S.Supp.2015, § 3-145.1(F), and receives travel reimbursement from the State Department of Education, see id. § 3-145.2(C). Further, if the Board denies, declines to renew, or terminates a charter contract with a statewide virtual charter school, that decision may be appealed to the State Board of Education. See id. § 3-145.3(F).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2006 OK 32, 136 P.3d 656, 
YDF, INC. v. SCHLUMAR, INC.
Discussed

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 858-706, 
Board Powers and Duties
Cited

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 695.7, 
Oklahoma State Bond Advisor
Discussed at Length

 
62 O.S. 695.8a, 
Creation of Bond Oversight Revolving Fund
Cited

Title 70. Schools

 
Cite
Name
Level

 
70 O.S. 3-131, 
Purpose
Discussed